NEW TRIALS——EXECUTORY DEVISE——FRAUDULENT CONVEYANCE.

## Adrian N. Mayer *vs.* Peter Wiltberger.

### *Motion for a New Trial.*

1. The verdict of a Special Jury must be manifestly contrary to evidence and the principles of Justice, to justify the Court in granting a new trial. In case of doubt, the Court will not interfere, especially after two concurrent verdicts.

2. The admission of an incompetent witness is not ground for a new trial, where *all* the facts, testified to by him, are proved by other testimony.

3. The devise of an absolute estate in fee may be qualified, by a subsequent limitation upon contingency, in the same will.

4. But if such contingency be an indefinite failure of issue; it is void, and the absolute estate vests in the first devisee.

5. Where a will contains a limitation, on a *definite* failure of issue; the Court will not, after verdict, construe a subsequent limitation of the same property, as intended to be on an *indefinite* failure of issue, unless that intention is clear and manifest, from the expressions of the will.

6. A limitation to J. S. as "*survivor,*" indicates an intention to limit on a *definite* failure of issue.

7. A limitation, on a *legal* contingency, which has happened, will not be defeated by a subsequent limitation on an *illegal* contingency.

8. In deciding whether a limitation in a will is on a definite, or indefinite, failure of issue; the question is, which did the testator intend?

9. Recording a deed, required by law to be recorded, is constructive notice of the conveyance, to all subsequent purchasers.——Rule same as to a will. *Semb.*

10. A bona fide purchaser acquires, by purchase, no larger estate in the subject, than that of his vendor.

This was an action of Trover, brought by the plaintiff, against the defendant, to recover a negro boy, named Peter, or his value and hire.

On the trial of this cause before the Petit Jury, as also before the

[Mayer vs. Wiltberger.]

Special Jury, at the present term, verdicts were returned by each, in favor of the above named plaintiff, with costs of suit.

And now the defendant moves for a new trial, on the following grounds:

First: Because his Honor, the presiding Judge, erred, in admitting John Hover, to be sworn as a witness; he being incompetent, by reason of his interest, as executor of the will, under which the plaintiff claimed.

Second: Because, by and under the will of Cyrenus Mayer, the elder, the property, the subject of dispute in the above case, vested, absolutely, in Cyrenus A. Mayer, the younger, under and through whom the defendant claims title.

Third: Because the defendant, being a bona fide purchaser, for a valuable consideration, was, under the proofs in the case, entitled to protection, against the claim of the plaintiff.

Fourth: Because the evidence in the case authorized the presumption of marriage, between Cyrenus A. Mayer, under whom the defendant claims, and the female with whom he lived, the mother of his children; and, consequently, that he left lawful issue.

Fifth: Because the verdict is against Law and evidence.

Having given the foregoing grounds of this motion my best reflection, since the argument of the same, in connexion with the facts, as they were in evidence before the Special Jury, I cannot come to the conclusion, that the verdict, which is complained against, is so clearly contrary, either to the evidence, or to the principles of Justice and Equity, as will authorise me, upon the present occasion, to grant the defendant the new trial asked for, especially after the rendition of two concurring verdicts.—*Prince D.* 432; Cumming *vs.* Fryer, *Dudley R.* 182. Before this Court is justified in setting aside the verdict of a Special Jury, it must clearly appear to it, that the same is manifestly contrary to the evidence, and the principles of Justice and Equity, or a new trial will not be granted.

[Mayer *vs.* Wiltberger.]

But, as the reasons for this opinion are required to be stated, I will proceed to do so, in as brief and condensed a manner as possible.

The first ground of this motion, is—That this Court erred, in admitting John Hover to be sworn as a witness, he being incompetent, by reason of his interest, as executor of the will under which the plaintiff claimed. It is true, this Court did admit the witness, John Hover, to be sworn on the trial, *upon the production, by the plaintiff's counsel, of a release of all his interest in said suit, duly executed and delivered by him.* And, in doing so, it is by no means satisfied, that error was committed. But, admitting such to be the fact, still, the answer which may be given to this ground, is conclusive, as it seems to me, against its sufficiency; and it is this—That all the material facts, which were sworn to by this witness, were as clearly and distinctly proved, by all the other witnesses in the cause, and particularly, by the defendant's own witness, Mr. Hiram Roberts—If, then, there was other testimony in the cause, to establish the same facts, which was competent and credible, and upon which the Jury could have relied, to sustain their verdict; the admission of the witness, Hover, to testify, admitting him to be clearly an incompetent witness, can form, I apprehend, no good or sufficient ground, why this Court should set aside the verdict of the Special Jury, and award to the defendant the new trial asked for.—*Graham on New Trials*, 246, 247, 249. But, as little reliance seems to have been placed on this ground of the motion, by the counsel for the defendant; for the reasons above given, I must overrule it, without further remark.

And this brings us to the consideration of the second and third grounds of this motion. These grounds present the real merits of the present motion. We will examine and dispose of them, in the the order in which they stand.

The second ground of this motion, then, is—That by, and under, the will of Cyrenus Mayer, the elder, the property, the subject of dispute, in the present action, vested, absolutely, in Cyrenus A. Mayer, the younger, under and through whom the defendant claims title. If this be true, upon principle and authority, clearly established, then it must follow, as an inevitable consequence, that the verdict, which has been rendered by the Special Jury, in favor of the plaintiff, is

[Mayer vs. Wiltberger.]

contrary both to Justice and Equity, and that a new trial ought, therefore, to be awarded the defendant, on this ground alone. But, before we arrive at this conclusion, it becomes necessary to examine the language and terms of the will, under which the plaintiff claims his title to the negro in dispute; and, then, ascertain whether the legal proposition, which is presented by this second ground of the motion, can be sustained, upon the footing of authority, so as to vest, under the language and terms of said will, an absolute estate in the boy Peter, in Cyrenus A. Mayer, the younger, under and through whom the defendant claims title.

Now, the plaintiff, in the present action, founds his title to the negro in dispute, under the will of his uncle, Cyrenus Mayer, the elder, executed and published in the Parish of St. Peter, State of South Carolina, and bearing date the 13th December, 1817. This will was admitted to probate and record, before the Honorable the Court of Ordinary for the County of Chatham and State of Georgia, at May term, 1823. That portion of it, upon which he relies for his recovery, in the present action, reads as follows :

"Item : I give, devise, and bequeath, unto my nephews, Adrian "Napoleon Mayer and Cyrenus Augustus Mayer, sons of my brother, "Philip Mayer, and to their heirs and assigns forever, the negro "slaves hereinafter named," (among whom is the boy Peter, the subject of the present action,) "together with the future issue and in- "crease, equally to be divided between the said Adrian and Cyrenus, "share and share alike."

"Item : I give and devise to my said nephews, Adrian Napoleon "Mayer and Cyrenus Augustus Mayer, all the residue and remain- "der of my estate, real and personal, whereof I may be possessed, at "the time of my decease, equally to be divided between them. To "have and to hold to the said Adrian and Cyrenus, their heirs and as- "signs, forever."

"And, in case the said Adrian and Cyrenus, or either of them, shall "die without lawful issue, living at the time of his death, or if the "said issue die, without leaving lawful issue, then, and in that case, "I devise that part of the said slaves, and all the residue of my es- "tate, devised to the one who may die without issue, unto the survivor, "his heirs and assigns."

[Mayer *vs.* Wiltberger.]

Now, there are two facts, apparent upon the face of that portion of the testator's will, which we have given above, which it may be proper here to notice, because much stress seems to have been placed upon them, by the defendant's counsel, in the argument of this motion. The first fact is—That under and by virtue of the language, as contained in the first two clauses above recited, the testator has given and devised to his two nephews, Adrian and Cyrenus, jointly, a fee simple estate, in the property therein described, as tenants in common. The second fact, is—That under the terms, as contained in said will, he has *not* given, *directly, to the issue, either of the said Adrian or Cyrenus, as issue,* any part of the estate therein given and devised to them; and that, consequently, whatever interest they may be entitled unto under said will, they take it by descent, and not by purchase. But, notwithstanding these two facts do appear in the face of this will, still, I apprehend, it is true, that a testator may, by a subsequent clause of his will, so qualify and restrain the previous estate given or devised *in fee,* that a limitation over of the same *in fee,* to a survivor, or any other person, upon a contingency which is restricted within the rule of Law, of a life or lives in being, twenty-one years and a fraction of a year, within which time issue may, by possibility, be in esse, will be held good and valid, by way of executory devise, if not technically a contingent remainder.—2 *Mod.* 289; *Lord Ray.* 28; *Fearne on Cont. Rem.* 398, 429, 444, 467; 2 *Bl. Com.* 173, 334; 4 *Kent Com.* 267, 269; 12 *Wheat.* 268; Anderson vs. Jackson, 16 *John. R.* 399. This legal proposition, I do not understand, is denied by the defendant's counsel; but it is contended by him, that, under the terms of said will, which we have given above, the limitation over to the survivor, the present plaintiff, is too remote, being dependent upon the contingency of an indefinite failure of the issue of Cyrenus A. Mayer, and therefore void; and that consequently, Cyrenus A. Mayer took an absolute fee simple estate in the boy Peter; and as such owner, had the right to dispose of him, absolutely, when, and to whom, he pleased. His argument in support of this general proposition, is founded exclusively upon these words of the will: "or, if the said issue die without leaving "lawful issue, then, and in that case, I devise that part of the said "slaves, and all the residue of my estate, devised to the one who may "die without issue, unto the survivor, his heirs and assigns." On the other hand, he admits, in most unqualified terms, that if this tes-

[Mayer vs. Wiltberger.]

tator's will had stopped, after the words, "In case the said Adrian "and Serenus, or either of them, shall die without lawful issue, *living* "*at the time of his death*," there could not be a doubt, but that the limitation, over to the plaintiff, as a survivor, would have been good by way of executory devise. The counsel for the plaintiff contends, that the limitation over to him, as survivor, created by the terms of this will, is not a limitation dependent upon the contingency of an indefinite, but a definite, failure of the issue of Cyrenus A. Mayer; and that, therefore, the limitation, over to him, is good, by way of executory devise. That, whenever the words, "*die without lawful issue living at the time of his death*," are to be found on the face of a will, they have always been held as clearly ascertaining the intention of the testator to fix the limitation over, upon a definite, and not an indefinite, failure of the issue of the first taker, and to free the case from all difficulty, or doubt, on that point.—That, even were these words not to be found in the face of this testator's will, but simply the words, "die without leaving lawful issue," still, he contends that the term, "survivor," will have a controlling effect over the isolated words above stated, take the case, without the operation of that rule of law, which is contended for by the defendant's counsel, and make the limitation over good, by way of executory devise. In support of this latter proposition, he relied upon the following authorities:—Fosdick *vs.* Cornell, 1 *John. R.* 440; Jackson *vs.* Blanshaw, 3 *John. R.* 292; Moffatt *vs.* Strong, 10 *John. R.* 12; Jackson *vs.* Stuarts, 11 *John. R.* 337; Anderson *vs.* Jackson, 16 *John. R.* 397; Wilkes *vs.* Lion, 2 *Cowen*, 333. We shall probably have occasion to refer to these authorities, in support of this decision, should it become necessary.

Now, the general legal proposition, contended for by the defendant's counsel, cannot be disputed, viz: That where, by the terms of a deed, or will, an estate is limited over to another, dependent upon the contingency of an indefinite failure of issue, in the first taker, the limitation over, in such case, is void, as being too remote; and the first will take an absolute estate in fee. If such were not the rule and policy of the Law, property might be tied up for generations.—Shelly's case, 1 *Coke*, 104; *Fearne on Ex. Dev.* 444; 4 *Kent's Com.* 273. But the question which is presented, under this second ground of the motion, is—Does the limitation over to the

plaintiff, as survivor, under the terms of the will we are now consider-
ing, fall within the operation of that principle of Law? After the
best reflection which I have been enabled to give the language of the
testator, in the will we are now considering, I cannot come to that
conclusion : for one of the plainest examples to be found in the books,
expressive of the intention of a testator to make a limitation over
dependent upon a *definite*, and not an indefinite, failure of issue, in
the first taker, *are the very words which are found upon the face of
this testator's will*, viz : "That in case the said Adrian and Cyrenus,
" or either of them, shall die, *without lawful issue living at the time of*
" *his death*—then the estate to go over."—*Fearne on Ex. Dev.* 468 ;
4 *Kent Com.* 273 ; Anderson *vs.* Jackson, 16 *John.* 399 ; Wil-
liamson *vs.* Daniel, 12 *Wheaton*, 568. These words, when found
upon the face of a will, have uniformly been held to take the case
without the operation of the rule of Law, contended for by the defend-
ant's counsel, and to make the limitation over, by way of executory
devise, good and valid. I am not aware of a single authority, to the
contrary.—Nay, it is conceded, by the defendant's counsel, as alrea-
dy remarked, that, if the limitation over, to the plaintiff, as survivor,
had been made, exclusively, to depend upon the force and effect,
which must be given to these words, his right to recover, in the
present case, could not be controverted, provided there was no
no other impediment in his way. Now, those words in a will, which
have been held to fix a contrary intention in the testator, are as
clearly to be ascertained, by reference to authority. They are, gen-
erally speaking, "heirs of the body, dying without issue"—"dying
without leaving issue"—or, "on failure of issue"—and similar expres-
sions, which stand alone in a will, and which are not qualified, ex-
plained, or enlarged, by any previous or subsequent words. The
cases of Daintry *vs.* Daintry, 6 *T. R.* 307 ; Hodgson, and wife, *vs.*
Ambrose, *Douglas*, 337 ; Forth *vs.* Chapman, 1 *P. Wm.* 663 ;
Patterson, Appellant, *vs.* Ellis' Executors, Respondent, 11 *Wendel*,
295 ; 5 *Randolph*, 273 ; 2 *McCord's Con. R.* (*S. C.*) 66–75 ; Con
*vs.* Porter, 1 *McCord's Ch. R.* 79—which have been so strongly relied
upon by the defendant's counsel, are all cases of that character, and
in neither of which are the words, "die without lawful issue living at
the time of his death," or any similar expressions, to be found. The
great struggle, as manifest from all the cases, on this point, has been
to confine, and tie up, the generality of the expressions, "dying

[Mayer vs. Wiltberger.]

without isssue,"—"dying, without leaving issue," and the like, to the time of the death of the first taker; and, by laying hold of some slight expression, in the will, to construe these words, as equivalent to the expression, "dying, without lawful issue living at the time of the death," and thus sustain the limitation over, as good, by way of executory devise. For this purpose, much stress has been laid on the words, "dying without issue living,"—"leaving issue behind him,"—"dying without children," and "survivor;" and a distinction has been taken, by some learned Judges, between a bequest of personal, and a devise of real, property—so as to restrain the rigid application of the rule, as it regards the former. This distinction has been recognized by Lord Macclesfield, in Forth vs. Chapman, 1 P. Wm. 663; and by Lord Hardwick, Lord Mansfield, Lord Eldon, and Chancellor Kent, in 3 Atk. 288; 2 Ves. Sen'r. 610; Cowp. 410; 9 Ves. Jun'r. 197, 203; and 16 John. 409, 419. The solidity of this distinction has, however, been questioned, by other Judges of, possibly, equal ability; and it is, therefore, somewhat difficult to determine, upon which side of this question is the weight of authority. But if there be no such substantial distinction, as to the application of the rule we are now considering, in reference to a bequest of personal, and a devise of real, property; still, I am inclined to think, there are cases, in which a Court would not feel itself so strictly bound down, in its application of the rule to personal property, but would be justified in laying hold of any expressions in a will, which, clearly manifesting the intention of a testator, would tie up the generality of his expressions, and confine them to a dying without issue, living at the death of the first taker.— Brummel vs. Barber, 2 Hill's S. C. R. 551; Roe vs. Jeffrey, 7 T. R. 589; Hughes vs. Sayer, 1 P. Wm. 534. As to the term, "survivor," even in relation to real estate, it is now the settled doctrine of the State of New-York, that it has such a controlling effect upon the isolated words, "dying without issue," as will take the case without the operation of the rule, and make the limitation over good, by way of executory devise. The authorities, in support of this doctrine, have been mentioned above, and might be applied to the present case, with great force, were it necessary. But, with the words which are written on the face of this testator's will, viz: "in case the said Adrian "and Cyrenus, or either of them, shall die, without leaving lawful issue, "living at the time of his death," it surely cannot be necessary, that

I should resort to, and lay hold of, any other expressions in his will, for the purpose of fixing his intention, as to the character and legal effect of the limitation over, created by these words. They seem, to me at least, to be clear and explicit, and as making the limitation over, to the present plaintiff, to depend upon the contingency of a definite, and not an indefinite failure of the issue of Cyrenus A. Mayer; and, unless the subsequent words and expressions, which are are also found on the face of this testator's will, can so manifestly control their legal effect, as to bring this case within the operation of the rule, as contended for by the defendant's counsel; I apprehend it will be the duty of this Court, to sustain the verdict of the Special Jury, and carry into effect what seems to it to be the manifest intention of the testator.

And this brings me to the consideration of those words in this will, which have been so strongly relied upon by the defendant's counsel, for the purpose of sustaining the proposition, that the limitation over to the present plaintiff is void, being too remote, and dependent upon an indefinite failure of the issue of Cyrenus H. Mayer. These words are, " or if the said issue die, without leaving law- "ful issue, then, and in that case, I devise that part of the said slaves, "and all the residue of my estate, devised to the one who may die "without issue, unto the survivor, his heirs and assigns." Now, did these words stand alone on the face of this will, and unconnected with any previous words, manifesting the intention of the testator; there might be great room to question the validity of the limitation over to the plaintiff, as survivor ; but, when taken in connexion with the words, immediately preceding them, I see not how otherwise they can be properly construed, but by a reference to these words. If thus construed, the intention of the testator, as it appears to me, would still be plain and manifest, and the limitation over made to depend, not upon an indefinite, but a definite, failure of the issue of Cyrenus A. Mayer. But, if a reasonable doubt can be entertained on that point, then it must be recollected that, by the terms of this will, the limitation over is made *directly to the plaintiff, as survivor ;* and that limitation is made to depend upon two contingencies, either of which, being legal and having happened, would, I apprehend, entitle the plaintiff to recover. We have already endeavored to shew that the first of these contingencies, upon which the limitation over

[Mayer *vs.* Wiltberger.]

is to depend, is good and valid, and within the rules of Law, *and has happened,* as proved by the testimony. Can, then, the subsequent contingency, admitting it to be clearly illegal, so control the previous contingency, which is conceded to be good and valid, as to render that illegal, also? I cannot think so; for if the limitation over, in its commencement, is dependent upon a contingency, which is clearly good, and within the rules of Law; no subsequent contingency, distinct in its character, but which may be illegal, can so alter and control the effect of that which is good, as to make the limitation over, dependent upon it, void and of no effect. But, after all, it is the intention of this testator, clearly expressed in the face of his will, which must at last decide this point. Whatever may be said to the contrary, this is emphatically the polar star, by which all Courts have, and must be, governed, in giving a construction to the language of a testator, as used by him in his will, and to which all other rules must bend.—3 *Peters' S. C. R.* 377; 6 *Ib.* 68. This intention, it is true, must be gathered from the words and language of the will itself, and when ascertained and found consistent with the rules of law, it should be supported, and carried into effect, even although the testator may not have expressed his intention, in clear and technical language; but, when such intention is expressed in clear and technical language, little room is left, either for doubt or construction. Taking, then, the whole clause of this testator's will together, which we have been considering, can there be a reasonable doubt entertained, but that he intended the limitation over to the present plaintiff, as survivor, was to depend upon a definite, and not an indefinite, failure of the issue of Cyrenus A. Mayer? It seems to me, he has so expressed himself, in clear and technical language, and having submitted that point, fairly, to the Jury, on the trial, and having given the same my best reflection, since the argument of this motion, I can discover no sufficient reason why I should now set aside their verdict, as being contrary either to the evidence, or the Justice and Equity of this case. And this brings me to the consideration of the third ground of this motion. That ground is: Because the defendant, being a bona fide purchaser, for a valuable consideration, was, under the proofs in the cause, entitled to protection, against the claim of the plaintiff. Now, that the defendant, in the present action, was a bona fide purchaser of the boy Peter, for a valuable consideration, *without any actual notice* of the existence and contents of the will of Cyre-

nus Mayer, the elder, is a fact, not disputed by the plaintiff's counsel. But it is, nevertheless, contended by him, that, as such purchaser, he had *constructive notice* of the existence and contents of said will, the same having been duly proved and recorded in the Clerk's office of the Court of Ordinary, for the County of Chatham, at the time of his purchase, and where the defendant then resided.   How far, therefore, the defendant, although a bona fide purchaser, for a valuable consideration, can and ought to be affected with constructive notice, as to the existence and contents of said will, under the facts and circumstances of this case, is a question which, I apprehend, upon legal and equitable principles, is not free from difficulty and doubt; and, when that is the case, a Court will seldom set aside the verdict of the Jury, especially so, after the rendition of two concurring verdicts.   In England, the doctrine seems now to be settled, in Equity, that the mere registration of a deed, or other instrument, which is recorded in conformity to Law, shall not be considered as constructive notice to a subsequent purchaser; but that actual notice, amounting to fraud, must be brought home to him.   Mr. Sugden, in his *Law of Vendors,* 460, remarks, that the protection and relief afforded to purchasers appears to arise, either from positive statutes, or from the rules of Equity; and Lord Mansfield held, that, in every case, between purchasers for valuable consideration, a Court of Equity must *follow*, and not *lead*, the Law.   That, accordingly, all the great Judges, who have succeeded Lord Mansfield, have determined that the legal estate must prevail, at Law.   Chancellor Kent, in his Commentaries, vol. 4, page 179, remarks: " It is, indeed, difficult " to define, with precision, the rules, which regulate implied or con- " structive notice, in England; for they depend upon the infinitely " varied circumstances of each particular case.   The general doc- " trine, unquestionably, is, that whatever puts the party upon enquiry " amounts, in judgment of Law, to notice. provided the enquiry be- " comes a duty, and would lead to the knowledge of the requisite " fact, by the exercise of ordinary diligence and understanding." But, in this country, a different doctrine has been held, as to the extent of constructive notice, and one which, I cannot but think, is most in accordance with Justice and sound policy.   It is this—That all deeds, or other instruments, which are authorized and required by Law to be recorded, and which are recorded, in compliance with Law, shall operate as constructive notice, to all subsequent purchasers of

[Mayer *vs.* Wiltberger.]

any estate, legal or equitable, in the same property. And the reasoning, upon which this doctrine has been founded, is the obvious policy of the registry acts, and the duty of the party, purchasing under such circumstance, to search for prior incumbrances, the means of which search are within his power, and the danger there is of letting in parol proof of notice, or want of notice, as to the actual existence of the instrument or its contents.—1 *Story's Eq.* 391, 392, 393; 4 *Kent Com.* 173, note (a). Is a will, then, such an instrument as is authorised and required by Law, to be recorded, so as to bring home, to a subsequent purchaser, implied or constructive notice of its contents? I am strongly inclined to believe that, both at Common Law, and under the fair construction to be given to our own Statutes, it is such an instrument, as is authorized and required to be re-recorded, and if so, the principles stated above would be applicable to the present case, in all their force. But I do not desire to be understood, as expressing any decided opinion, on that point; because I think, that this third ground of the motion, under the facts as they were in evidence before the Special Jury, may be disposed of, upon another independent, but well settled, principle of Justice and Equity —it is this: That even admitting that Cyrenus A. Mayer, in his lifetime, sold a greater interest in the boy Peter, than that to which he was legally entitled, under the will of his uncle, but which fact the testimony no where discloses; still, the purchaser from him could not become vested with any better title, than he then possessed, as against the rights of the present plaintiff, and this upon the well known maxim of the civil Law, " *nemo plus juris in alium transferre potest, quam ipse habet.*"—*Fearne on Executory Devises,* 421, sec. (3); *Long on Sales, Story's Ed.* 167, 168; Stevens *vs.* Ellwell, 4 *Manl. & Selwyn,* 259; Ventress *vs.* Smith, 10 *Peters,* 160; 10 *John. R.* 12; 16 *John R.* 159; 6 *Wendel,* 603; 11 *Wendel,* 80. Nor would any subsequent purchaser be in a better situation. It was upon this principle, I apprehend, that the Special Jury came to the conclusion, that the defendant ought not to be protected, notwithstanding he may have been a bona fide purchaser, for a valuable consideration; and in coming to this conclusion, I am not satisfied that any injustice has been done the defendant, especially as he has taken care to protect himself, by an express warranty of title, which the Law always implies, on the sale of personal property.

[Mayer *vs.* Wiltberger.]

The fourth ground of this motion presents a question of fact, which was the peculiar province of the Jury to determine, under the testimony. By their verdict, they have determined, *that Cyrenus A. Mayer departed this life, without leaving any lawful issue, living at the time of his death;* and so far as that fact is dependent upon the testimony, I can see no sufficient reason, why I should question the correctness of their verdict.

Upon the whole case, therefore, and for the reasons above given, I am not satisfied that the verdict, which has been rendered by the Special Jury, in favor of the plaintiff, is contrary either to the evidence, or the principles of Justice and Equity ; and I must, therefore, refuse to grant the defendant the new trial prayed for. The supersedeas heretofore granted is set aside, and the motion for a new trial is hereby over-ruled.

CHARLTON & WARD, for Plaintiff.
WILLIAM LAW and MILLEN & KOLLOCK, for Defendant.